STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert Lee SIMPSON, Defendant-Appellant.†

Court of Appeals

*No. 83–873–CR. Remand for reconsideration June 5, 1984.—*
*Decided February 25, 1985.*

(Also reported in 373 N.W.2d 673.)

† Petition to review denied.

Before Gartzke, P.J., Dykman, J., and Rudolph T. Randa, Reserve Judge.

GARTZKE, P.J. After the decision in *State v. Sarabia,* 118 Wis. 2d 655, 348 N.W.2d 527 (1984), the supreme court granted the state's petition for review in *Simpson.* The supreme court vacated that part of our opinion which reversed defendant's second-degree sexual assault conviction, remanded the case to us for reconsideration in light of *Sarabia,* and held in abeyance its decision on the defendant's petition to review the kidnapping issue.

On reconsideration, we conclude that we erred. No reasonable basis exists in the record to support a conviction for third-degree sexual assault. The trial court therefore did not err in refusing to instruct the jury on third-degree sexual assault. Acordingly, we affirm the second-degree sexual assault conviction.

In *Sarabia,* the defendant was charged with second-degree murder by gunshot. He testified that he did not fire the fatal shot but requested several lesser-included offense instructions, including manslaughter (imperfect self-defense) and homicide by reckless conduct, each of which assumes commission of the act underlying the offense. The supreme court upheld the trial court's refusal to submit the requested instructions because its review of the record apart from the defendant's exculpatory testimony convinced it that there was no reasonable ground for acquittal of the offense charged.

The *Sarabia* court pointed out that a special problem arises when the defendant presents "wholly exculpatory testimony" and inconsistently requests the submission of a lesser-included offense. Under such circumstances,

a court's duty to view the evidence in the most favorable light it will reasonably admit from the standpoint of the accused requires consideration of the possibility that the jury will disbelieve the defendant's version of the facts. 118 Wis. 2d at 663, 348 N.W.2d at 532. The supreme court said:

> We recognize that "there may be 'some evidence' of a lesser offense even though this depends on an inference of a state of facts that is ascertained by believing defendant as to part of his testimony and prosecution witnesses on the other points in dispute." *Belton v. United States*, 382 F.2d 150, 155 (D.C. Cir. 1967). We hold that the defendant or the state may request and receive lesser included offense instructions, even when the defendant has given exculpatory testimony, if under a reasonable but different view of the record, the evidence and any testimony other than that part of the defendant's testimony which is exculpatory supports acquittal on the greater charge and conviction on the lesser charge.

*Id.*

The *Sarabia* court had earlier quoted with approval and at length from *State v. Bergenthal*, 47 Wis. 2d 668, 675, 178 N.W.2d 16, 20 (1970), *cert. denied*, 402 U.S. 972 (1971). We excerpt from that quotation the following description of how we must approach the evidence when deciding whether to submit a lesser included offense:

> The key word in the rule is "reasonable." The rule does not suggest some near automatic inclusion of all lesser but included offenses as additional options to a jury. Only if "under a different, but reasonable view," the evidence is sufficient to establish guilt of the lower degree and also leave a reasonable doubt as to some particular element included in the higher degree but not the lower, should the lesser crime also be submitted to the jury.

Defendant is charged with "sexual contact or sexual intercourse with another person without consent of that

person by use or threat of force or violence." Sec. 940.225(2)(a), Stats. The proposed lesser-included offense, third-degree sexual assault, is "sexual intercourse with a person without the consent of that person . . . ." Sec. 940.225(3). Consent is defined as "words or overt actions . . . indicating a freely given agreement to have sexual intercourse . . . ." Sec. 940.225(4).

The meaning of consent is illustrated by the case law. Passive acquiescence and responding to directions during the sexual act is not consent when the victim tells defendant she does not want sex. *State v. Clark*, 87 Wis. 2d 804, 815, 275 N.W.2d 715, 721 (1979). Compliance during continuous objection is not consent. *State v. Lederer*, 99 Wis. 2d 430, 436, 299 N.W. at 457, 461 (Ct. App. 1980), *qualified on other grounds, State v. Feela*, 101 Wis. 2d 249, 264 n. 4, 304 N.W.2d 152, 159 (Ct. App. 1981). Evidence that defendant had sexual intercourse with a sleeping woman is sufficient to sustain a third degree sexual assault conviction. *State v. Spanbauer*, 108 Wis. 2d 548, 553, 322 N.W.2d 511, 513 (Ct. App. 1982).

The pertinent evidence in this record consists of testimony by the victim, a police officer and the defendant, and of a hospital record. The victim's boyfriend testified but he did not relate what she told him and was not present at the alleged crime. We exclude his testimony from this analysis. We adequately summarized the victim's testimony in our original opinion. We note only that she testified that both force and violence were used and threatened.

In our original opinion, we shortened defendant's testimony and characterized part of it as involving "consensual intercourse." We inferred from his testimony that he claimed the victim consented. At no point did he testify, in fact, that she expressly consented, agreed or objected to sexual intercourse.

According to defendant, he lived in Kentucky and was visiting his brother in Beloit. The evening before the alleged assault he had been in a Beloit bar. He left the bar about 1:00 a.m. and began to walk to his brother's apartment. A girl hollered at him from a filling station. She wanted to know where he was from, and he told her. He thought he might have seen her at a bar earlier that evening. She asked where he was going. He tried to explain that to her as best he could. When she offered him a ride, he got in the car. They started the same way he was walking. With no direction from him, however, she turned at a corner. She asked if he wanted to ride around a bit, and he agreed. She said that they would ride out into the country. At one point, perhaps four or five miles out of Beloit, she stopped the car so he could urinate. They continued a couple of miles and eventually drove onto a small road. She pulled off and stopped the car. She did not tell him why. He simply sat there, talking to her. She moved her seat back and "scooted.. over on a console between the seats. She asked him when he was going back to Kentucky and wanted to know if anyone had come with him from that state and "the next thing I know I have my arm up on the seat and we were kissing each other." "We kissing and after it led to that for awhile, it went into sexual intercourse." She had undressed herself, taking off her shoes and her pants. He left the car to urinate. He then returned and she drove the car back to Beloit. The balance of his testimony is essentially as reported in our original opinion.

Officer Ludtke testified the victim was hysterical when he interviewed her about 2:45 a.m. at her house. She said a white male forced his way into her car, took her out to the country and had intercourse with her. Ludtke took a written statement from her which the trial court did not admit in evidence.

The hospital emergency room examination record states that the victim was calm, cooperative and com-

posed but had been crying, smelled of alcohol, and had scratches on her left posterior thorax, left back knee and hands. It contains no reference to choking or bruise marks. In response to the form question, "Physically threatened?", the report states, "Yes, pull knife, hit, choked."

We return to the *Sarabia* analysis. The *Sarabia* court established that we must, for purposes of lesser-included offense analysis, reject the defendant's wholly exculpatory testimony. We then examine his remaining testimony and the other evidence to determine whether it supports an acquittal on the greater charge and conviction on the lesser charge. 118 Wis. 2d at 663, 348 N.W.2d at 532.

Had defendant testified that the victim consented to intercourse, that testimony would have been wholly exculpatory. But even though we characterized his testimony in that manner, nowhere did he testify that the victim consented. His denial that he used force or violence is not wholly exculpatory, being consistent with third-degree sexual assault, sexual intercourse without the consent of the victim. Sec. 940.225(3), Stats.

Because no part of the defendant's testimony is wholly exculpatory, we exclude none of it. We therefore examine the record to determine whether it contains a reasonable basis for a finding that defendant had sexual intercourse with the victim without the use or threat of force or violence.

The victim asserts that force and violence were used and threatened. Officer Ludtke did not contradict her testimony. Nor does the hospital record. The irresistible inference from defendant's testimony is that the victim engaged in consensual sexual intercourse. No room is left for an intermediate finding of sexual intercourse without consent, third degree sexual assault.

If we were to treat as wholly exculpatory, and therefore exclude from our consideration, that part of de-

fendant's testimony from which the inference is drawn that the victim consented, her testimony that he used and threatened force and violence would stand uncontradicted. Again no room is left for third degree sexual assault, unless we disregard the victim's testimony.

The question is therefore whether in a *Sarabia* analysis we must disregard the other evidence that force or violence was used or threatened. In other words, must we not only disbelieve that part of defendant's testimony from which we infer consensual intercourse (treating it as wholly exculpatory) but also disbelieve that part of the victim's testimony that defendant accomplished sexual intercourse with her by the use or threat of force and violence? We conclude on the basis of the authorities cited in *Sarabia* and the "reasonable view" rule that the victim's testimony may not be partly disregarded for purposes of lesser-included offense analysis.

We begin by noting that the *Sarabia* court did not decide whether we must disregard other evidence for the purpose of deciding whether to allow the jury to consider a lesser offense even though no evidence supports it. We next note that the *Sarabia* court quoted with approval from *Belton v. United States,* 382 F.2d 150 (D.C. Cir. 1967). We therefore look to the *Belton* decision for guidance.

The issue in *Belton* was whether the trial court erred when it instructed the jury on first-degree murder but refused a defense request for manslaughter instructions. Affirming the decision of the trial court, the *Belton* court said:

Here there was no testimony "fairly tending" to bear on manslaughter—i.e. fairly tending to show that deceased unjustifiably assaulted appellant with a gun, he wrested the gun from her control, and then shot her in the heart. This could only be made out if the jury reached a conclusion as to occurrences not related in the

testimony of any witness and obtained by a reconstruction of events. There may be cases where that kind of reconstruction is fairly inferable from testimony though not directly stated therein, but we do not think the present case warrants that description. It is rather a case where the charge requested was objectionable as based on speculation without foundation in the evidence. [Footnote omitted.]

382 F.2d at 156.

Consequently, the *Belton* court refused to disregard the testimony of other witnesses and other evidence in the case when deciding whether the lesser-included offense should have been submitted. Because the *Sarabia* court relied on *Belton* when developing the analysis we follow here, we conclude that we should apply the *Belton* rule and not disregard the other evidence.

We are, we repeat, to take a "reasonable view" of the evidence. *Bergenthal*, 47 Wis. 2d at 675, 178 N.W.2d at 20, *Sarabia*, 118 Wis. 2d at 663, 348 N.W.2d at 532. We conclude it would violate the "reasonable view" rule were we to disregard the testimony of other witnesses—here the testimony of the victim—which leaves no room for a lesser-included offense.

It is unreasonable to find a basis for a lesser-included offense by assuming that the jury may repudiate the other evidence if none of it supports the lesser offense. It is unreasonable because jurors are assumed to be reasonable in their deliberations. If, of course, the testimony of the other witnesses conflicts, and part of the testimony supports the lesser offense, that offense must be submitted to the jury. Similarly, if part of the testimony of other witnesses reasonably supports an inference providing a basis for the lesser offense, that offense must be submitted to the jury. But if none of the other evidence or reasonable inferences from it support the lesser offense, it cannot be said that under a different but "reasonable view" the evidence is sufficient to establish guilt of the lower degree, as consistently required by our supreme court.

We are not at liberty to reject the "reasonable view" rule. It has been imbedded in Wisconsin law for over a hundred years. It was applied (without calling it such) as early as *The State v. Hammond,* 35 Wis. 315, 320 (1874). It was expressly applied as early as 1901 in *Hempton v. The State,* 111 Wis. 127, 140–41, 86 N.W. 596, 600 (1901), and of course as late as 1984 in *Sarabia, supra,* itself. Nor can we convert the "reasonable view" rule to "some near automatic inclusion of all lesser but included offenses as additional options to a jury," a proposition which the *Bergenthal* court rejected. 47 Wis. 2d at 675, 178 N.W.2d at 20.

To find a basis for third-degree sexual assault by disregarding the testimony of the victim in the case before us would be tantamount to automatic inclusion. Indeed, no reason would exist for stopping short of battery as an included offense.[1]

We conclude that the trial court did not err when it refused to instruct the jury on third-degree sexual assault.

*By the Court.*—On reconsideration, the second-degree sexual assault conviction is affirmed.

DYKMAN, J. (dissenting). The majority's holding is succinctly stated: "We conclude . . . that the victim's testimony may not be partly disregarded for purposes of lesser-included offense analysis." This conclusion denies the jury's role as fact-finder to sift and weigh evidence, and runs counter to longstanding case law estab-

---

[1] A similar conclusion caused the Michigan Supreme Court to restrict its near automatic inclusion rule which it adopted in *People v. Chamblis,* 236 N.W.2d 473 (Mich. 1975). Recognizing that such a rule would allow a jury to find a defendant guilty of battery when charged with murder, the Michigan court felt compelled to qualify its rule as follows: if the charged offense is punishable by incarceration for more than two years, the trial court may not instruct on lesser-included offenses for which the maximum incarceration is one year or less. *Chamblis,* 236 N.W.2d at 483.

lishing the jury's right to disbelieve portions of a witness' testimony while accepting others.

The Wisconsin Supreme Court recently stated in *Penister v. State,* 74 Wis. 2d 94, 103, 246 N.W.2d 115, 120 (1976):

> On the basis of the facts revealed at trial, the jury could have chosen to reject [the prosecutor's principal witness'] testimony *in toto,* but it chose not to do so. We have held that, even where a witness is inconsistent and where some of his testimony is incredible and contradictory, the jury is entitled to believe some, all, or none of his testimony.

This proposition was endorsed long ago. *See e.g. Heibel v. Voth,* 271 Wis. 350, 356, 73 N.W.2d 421, 424–25 (1955); *Di Benedetto v. Milwaukee E.R. & L. Co.,* 149 Wis. 566, 570, 136 N.W. 282, 284 (1912). Even where a witness lies, the jury may accept portions of that witness' testimony: "suspected exaggeration does not necessarily deprive testimony of all weight as a matter of law. Indeed, wilfully false testimony on one point does not require the jury to reject all of the witness' evidence." *Mackowski v. Milwaukee Automobile Mut. Ins. Co.,* 275 Wis. 545, 550–51, 82 N.W.2d 906, 908–09 (1957). *See also Nehls v. Nehls,* 21 Wis. 2d 231, 237, 124 N.W.2d 18, 22 (1963); Wis J I—Criminal 305 (wilfully false testimony permits jury in its discretion to disregard all the witness' testimony except where it is corroborated.)

*Sarabia* permits instructions to a jury based on a reasonable view of the evidence. It does not force an *in toto* choice of the more reasonable of the two views offered by the prosecution and the defense. A reasonable view of the evidence implies that the view may constitute an amalgam of evidence and testimony from various sources.

Reasonableness is dispositive under *Sarabia.* What views of the evidence are reasonable here? The defendant admitted the sexual intercourse without comment on consent, but denied the threat or use of force. This

testimony is consistent with third-degree sexual assault, though the majority ignores it because it is exculpatory. Whether the defendant's testimony is ignored, or recognized as consistent with third-degree sexual assault, two reasonable views of the victim's testimony considered alone support instructions on second- and third-degree sexual assault.

I agree with the majority that a reasonable view of the evidence supports the second-degree instruction. However, a second reasonable view of the evidence establishes nonconsent but leaves reasonable doubt as to the use or threat of force which distinguishes second- from third-degree sexual assault.

The victim testified that defendant said he had a knife. However, she never saw a knife, or a clothing bulge which might conceal it. This testimony was inconsistent with an emergency room report which indicated that she stated a knife was "pulled" by the defendant. Further, no knife was discovered on the defendant, in the car, or elsewhere.

The victim also testified that the defendant grabbed her hair, shook her head and slapped her, and that he pinned her down and removed her clothing. Corroborating evidence is almost nonexistent. Hospital records show no indication that the victim exhibited choking marks. "There were no bruises on her body, although minor scratches were found on her back which she testified were not present prior to the assault."

Viewing the victim's testimony alone and reasonably, the evidence on use or threat of force is weak enough to create a reasonable doubt. A jury could also reasonably believe defendant used or threatened force.

This view of the evidence, the majority contends, would support lesser-included instructions *ad infinitum:* "[D]isregarding the testimony of the victim . . . would be tantamount to automatic inclusion . . . no reason would exist for stopping short of battery as an included offense." No reasonable view would suggest battery

here: even the defendant's testimony is consistent with third-degree sexual assault.

The requirement of reasonableness limits frivolous instructions. The majority's *reductio ad absurdum* contention was rejected by the supreme court in *State v. Bergenthal*, 47 Wis. 2d 668, 674–75, 178 N.W.2d 16, 20 (1970), *cert. denied*, 402 U.S. 972 (1971), quoted in *Sarabia*, 118 Wis. 2d at 661–62, 348 N.W.2d at 531: "The key word in the rule is 'reasonable.' The rule does not suggest some near automatic inclusion of all lesser but included offenses as additional options to a jury."

This is the holding of *Belton* which the majority misses when attempting to distill the *"Belton* rule" from that decision: "the *Belton* court refused to disregard the testimony of other witnesses and other evidence . . . when deciding whether the lesser-included offense should have been submitted." It was not disregarding or weighing testimony which *Belton* refused to do. *Belton* refused to mandate an instruction for which no evidence existed: the lesser-included offense "could only be made out if the jury reached a conclusion as to occurrences not related in the testimony of any witness and obtained by a reconstruction of events." 382 F.2d at 156. Justification of the lesser-included offense in *Belton* required the manufacture of testimony. This is substantially different from merely accepting as a reasonable view a reasonable doubt regarding part of a victim's testimony. Regardless of this distinction, the *Belton* court notes that had the reconstruction of events by trial counsel been as good as that of appellate counsel, the lesser-included offense instruction should have been given. *Id.* *Belton* concludes by stating a preference for giving a lesser-included offense instruction in close cases.

*Belton* is consistent with Wisconsin law. Lesser-included instructions should not be given where supported only by fabrication, but if the "fabrication" approaches a reasonable view of the evidence, doubts should be re-

solved in favor of giving the instruction. I would remand for a new trial.